and I understand that the Board of Governors is on Zoom. Good morning, your honors. May it please the court, my name is Sarah Kintzler and I represent the appellant Taier Chaney. As this court recently affirmed in United States v. LaRue, a district court must satisfy four conditions to meet the statutory requirements for a remote proceeding under the CARES Act. In this case, the district court committed error in making two of the four requisite findings. First, the district court failed to find for specific reasons that the sentencing could not be further delayed without serious harm to the interests of justice. Second, the court erred when it found that Mr. Chaney had consented to proceeding remotely after consulting with counsel because any consent elicited in this case cannot be considered meaningful, given that the court pronounced there would be no further adjournments, essentially coercing a remote appearance. But didn't the district court offer Mr. Chaney, if he wanted the proceedings in person, didn't the court say all he had to do was say so and he would conduct it in person? Yes, but at that point, you know, the court had already put on the record no further adjournments. And here Mr. Chaney was at a remote appearance without access to his counsel who was not next to him to advise him in any manner. But he said if Mr. Chaney said anything, he would change it to an in-person proceeding. Didn't he say that? Well, you know, at the plea, what the court said was actually very misleading. The court said basically we're working under a court order, which connotes that it could be mandatory, that we're trying to replicate what would take place in an in-court proceeding, but we're not going to hold it unless you demand to be here. So the court framed consent as something that my client had to demand. Or ask for. Yeah. And then. Demanding or asking for it. He never asked for it. Isn't that correct? Well, the attorney did request one adjournment because of the complexity of the case. And in ruling to grant that adjournment, the court, you know, underlined and in all caps said no further adjournments would be granted. So, you know, there's a real question here of the impact of that order on my client and on attorneys in feeling that they could ask for an adjournment for any reason when no adjournment for any reason was going to be granted. Even appearing in person. So, you know, as to the specific findings that the court did not make in this case, the court cited only general reasons. An interest in finality, the public's interest in timely punishment, deterrence, safety, a speedy resolution. Most of these reasons do not even apply to Mr. Cheney's case. I'm sorry, why do they not apply? Why does the public not have an interest in Mr. Cheney's case as opposed to others, for example? Well, here the delay between plea and sentence was not that long. It was only four months had passed at the time of sentence between his plea and sentence. Another reason is he was already incarcerated for a crime that took place over the same period. He had been in prison since 2012. Well, that's true in a lot of cases, though, isn't it? I mean, I would think we would have speedy trial or speedy sentencing issues if we just said, well, you know, you're sitting in prison for a state sentence, so we'll get around to you when we get around to you. I mean, I think then we'd be hearing the opposite argument, right? I mean, don't we always have an interest in moving things along so that the defendant, maybe he thinks it's wrong and he'd like to bring an appeal? And, for example, challenges, as he's doing now, he's challenging his plea and said, I don't think I should be guilty at all, and he can't come to us until he's been sentenced, right? The other side of that is that the CARES Act calls for specific findings, and if those words are to have any meaning, I mean, these are reasons that would apply in any case. The public has an interest in a speedy resolution in any case. So the mandate that there are specific reasons has to mean something, or every case would automatically qualify because of a public's interest in a speedy resolution. There would, in fact, be no need for a court to make specific findings, as there is here. If you look at this court's recent ruling in LaRue, in that case, while the court's rulings in the first instance were sparse, the court corrected that at a later hearing, in which the court made specific findings that applied to Mr. LaRue's case. LaRue had an interest in a timely proceeding that would allow him to promptly appeal his sentence if it was greater than time served, which is what he was expecting, and would allow him to be designated more quickly to a correctional facility. These reasons are specific to LaRue, a cooperator who was facing the possibility of a time served sentence. He had an interest in learning of that sentence and appealing it if it was not what he expected to get. That is the type of case that the CARES Act was enacted to apply to, a particular case where the interest of justice is implicated, such as when a defendant- Would Mr. Cheney be happier if he couldn't be here today, considering that he would like to vacate his sentence and vacate his plea? Do you think he would be better off if all of this had been delayed and he couldn't come to us for another year to raise the argument that he's raising now? I guess I'm a little confused. It seems to be sort of making the opposite argument. Come to appear before Your Honor, sir? Because the only way he gets his plea vacated is by asking us. Yes. So I'm a little confused that if the judge hadn't made the findings, he wouldn't be here. What my client deserved was an opportunity to appear before a district court in person to have his individual circumstances and individual characteristics weighed by a judge. He was in a case where there was a great import to him to be there, given the wide range of penalties possible. What he got was a sentence where he did not appear before a judge, and which he did not consent to, and which the judges did not make individual findings about the reasons for that proceeding. Am I correct in understanding that Mr. Cheney never sought to adjourn sentencing a second time? He did not seek to adjourn a second time. That's correct. What do we draw? What can we draw? What should we draw from that fact? Well, what I draw from that is that the court wrote in all caps on the dockets, this is the final adjournment. So any effort to seek an adjournment after a court says this is the final adjournment would seem to be an exercise in futility. Yeah, so that's not the ordinary course of our jurisprudence. Even when you know a district court judge is going to say no, you make the objection so that you preserve it. So what are we to draw from the fact that you didn't ask? Well, at that point, it was all about, you know, in terms of preserving objections, in terms of making Mr. Cheney's intent known, it became incumbent on him to indicate a lack of consent, right? And here he was all by himself, you know, in a cage looking at a screen without his lawyer, being asked about consent without any opportunity to consult with his lawyer prior to that moment. So you submitted a letter, the 28-J letter, stating that your client had no opportunity to consult with counsel before consenting to proceed remotely at sentencing. And at the sentencing transcript, Judge Scretney does say, I understand you discussed it. In other words, discussed it with your counsel. Am I correct to understand that that's to mean that Cheney discussed with counsel whether to consent to proceeding remotely for a sentencing? There was no opportunity for him that day, during that proceeding, prior to that moment, to have a discussion with his lawyer. The judge says, I understand you discussed it. What does that mean? Doesn't that mean you discussed it with your counsel? I'm not saying that what the judge says at that moment means anything other than what it means. But when you're asked, when a consent is elicited from a defendant, when that defendant has no direct access to their attorney- But I think you're saying simultaneous access, right? Like at the moment that the judge and the defendant are talking to each other, of course, by definition, he's not in that very moment talking to his lawyer. I mean, the consultation doesn't have to be simultaneous, that you're having two conversations. But I think as Judge Loyer points out, he says, I understand you discussed it. He says, this proceeding is scheduled by your attorney's advice, my court-warned deputy, that you consent to proceed by video. And then he says, is that correct? And then the defendant says, yes. So I guess the trick is, right, you're saying, well, no, he had no opportunity to talk to his lawyer and figure this out. But the judge said, I understand you did talk to your lawyer and you're consenting. And then the defendant actually said to him, yes. And now I understand you're making the argument that no, he didn't. But usually when we have a declaration by a defendant in open court before the judge, you know, he doesn't get to say, yeah, I didn't really mean it. Well, what I'm saying is that when a judge says there will be no further adjournments for any reason- Is there any evidence that your client saw that? It's a docket entry? Yes. There's evidence that he saw that? No, no, but- As opposed to the stuff that the court said to him face to face. And that's the reason we have these open proceedings, right? So if there's any misunderstanding, the district court can say, okay, Mr. Defendant, let me just be clear about how this all works. You're not being forced to do this, right? No. You talked about this with your lawyer, right? Yes. And you're consenting to do this. And he says yes. And now you're supposed- I guess the suggestion is that because there was a docket entry that he may or may not have seen, that calls into question all of the things that he said expressly in the record. It's kind of an uphill battle, I guess. Well, when a judge issues an order on the docket, that order controls what happens in the case. Whether he wants an adjournment or not- Well, the judge can take it back, right? I mean, the judge can enter an order. I mean, if we had said, look, you're arguing today, but you showed up and we said, you know, counsel, if you don't feel prepared to argue today, we're prepared to put this off. I don't think he would say, yeah, I don't think it counts that you told me that. Because you once said something else in the docket, and you, the court, can't take it back or clarify it. And I guess isn't that the situation here? There's a docket entry you're arguing that the court was never able to clarify? Well, a docket entry is a communication to the parties. And it's the government's burden here to establish that Mr. Cheney's consent to the remote proceeding was knowing and voluntary. And our argument is that they cannot meet that burden, given that record. Well, let me put it this way, then. Once that docket entry was put on, are you saying there's no way the court could have ever adjourned? What if counsel had come in and said, Your Honor, I know there was a docket entry, but, you know, we really want to have it adjourned? And the court said, yeah, I'm totally willing to adjourn it. And the defendant said, no, no, no, I don't. I'm not going to ask for an adjournment. It sounds to me like you're saying the same argument, that it doesn't matter what they said in court. Once it was on the docket, just no amount of discussion in the courtroom can clarify it. Or are you saying just that this discussion didn't clarify it? I'm saying that it's a communication that was interpreted by the appellant and his lawyer, and that it meant what it meant. Okay. Well, you've reserved some time for rebuttal. Yes. So we'll hear from the government on the vote. Good morning, Your Honor. May it please the court. My name is Tiffany Lee, and I represent the United States. I wanted to thank both the court and his counselor for allowing me to appear via remote proceedings today. The salient issue here is whether or not Mr. Cheney has established, through all the prongs of plain error review, to be entitled to the relief he seeks today. So even were this court to find that the district court somehow erred in its application of the CARES Act before engaging in the video teleconference with Mr. Cheney for his plea and sentencing proceedings, the question still remains whether or not Mr. Cheney can establish that his substantial rights were impacted by this error. And it is the government's mission that, no, his substantial rights were not affected because the outcome of the proceedings would not have changed, despite Mr. Cheney's arguments that somehow it would have made a difference if he had appeared in person. Specifically, the main issue here is the fact that Mr. Cheney got exactly what he bargained for. He entered into a Rule 11C1C plea agreement, which allowed him to submit to the court, where both parties admitted to the court a specific sentence that they wanted the court to impose, or the district court to accept the plea agreement. The district court did accept the plea agreement, agreed with the 240-month sentence, and Mr. Cheney was not only waiving his right to challenge that sentence, but also waiving to challenge any issue. Well, hang on a second. He waived his right on appeal, right, to challenge the consecutive versus concurrent. But he did not waive his ability to argue in the district court for concurrent versus consecutive, right? That's correct. So the appeal waiver doesn't seem to have any bearing on substantial rights, because we're talking about whether it affected substantial rights in the district court, right? So what does the appellate waiver have to do with your harmless error, your third prong of Alano? It has, well, the third prong is the fact that he knew that he, whatever the outcome, with respect to whether or not the sentence was going to be imposed consecutively or concurrently, was not going to be one in which he would be able to appeal. But that has no bearing on the harmlessness. I agree, though. I think you're confusing two issues here about whether he waived his right to appeal that and whether it could have affected his substantial rights before the district court. He did not waive his ability to make these arguments in the district court. Now, I would understand your argument if you were saying his appearing remotely or in person could not have had any demonstrable effect on the district court's choice as to running the sentence consecutively or concurrently. But that is analytically distinct and irrelevant to the question of whether there was an appellate waiver, isn't it? Or am I missing something here? No, you're not, Your Honor. You're correct, Judge Nardini. So as to the third prong, you're correct. I mean, this on the third prong, the imposition of the sentence, be it consecutively or concurrently, I would rely on this court's recent opinion and proof, in which case this court, Judge Loyer, in its decision, noted that with respect to the third prong, any claim that potentially it would have made an impact for the defendant to appear in person in order to convey a sense of remorse or to convey something in person, that issue is highly speculative. So similarly here, to the extent that Mr. Cheney is arguing, it would have made a difference for me in terms of whether or not the district court was going to impose this consecutively or concurrently had I appeared in person. Again, that would be entirely speculative. May I ask you a question? Yes, Your Honor. And I very much appreciate the argument you're making, but it's a little bit of a puzzle to me with respect to the CARES Act requirement. Let's say that the district court had made no statement about why delay would harm the interest of justice. What should result from that? If there were no finding and everything else stayed the same, what would we do? What should we do? That is a very good question. I think it's unclear in terms of what the remedy would be under those circumstances, and I guess it would also depend on the posture. Because right now, this case, as in LaRue, is under a plain error posture. So if at the time during a defendant's sentence they raised something and say, wait a minute, judge, you did not make the specific findings, then I think that would determine in terms of any outcome down the road. But in terms of under plain error analysis, if no one says anything about it, even were this court to find error, it would have to go through all the prongs of plain error. Well, I guess my question is, are there not circumstances where the absolute failure of a district court to make the requisite findings would constitute plain error? I mean, I focused on your substantial rights analysis, and we don't know, but there's a reason why the CARES Act was written that way, and there's a reason why we take very seriously the right of the defendant to appear in person absent consent otherwise. So is there any circumstance that you can see under which a district court's failure to make the requisite findings would result in reversal? I think basically this court's decision in LaRue has suggested that there may be a path depending on the right circumstances of the case. But I think, you know, that said, that is not this case. And let me just pick up on something that your friend, Ms. Kunstler, mentioned. Would it be enough in the government's view for a district court to make a boiler state statement that delay would harm the interest of justice for the same reasons in every criminal case, or does the interest of justice finding need to include some facts or analysis specific to each case? I think so long as the district court makes the findings that it has in this case, the government would submit that that's sufficient. It's somewhat similar in speedy trial cases where the district court, which has been presiding over a certain case, knows the matter well enough to be able to make the determination and make the conclusion that, you know, for the interest of finality, for the interest of not building... But if it says the delay would harm the interest of justice and that's it, is that enough in the government's view? The government submits it is enough, but it's... That's problematic. Obviously it is, you know, basically it's the district court in its application of the CARES Act here determined that it was making those findings necessary in order to proceed via video teleconference. It's not as if the district court did not say anything at all. No, I appreciate that. I'm sorry to ask these questions, but there are very important critical rights implicated here, and I'm interested in understanding the government's view of where is the line. There must be a line, particularly when we have such an important right to appear in person for a plea or a sentencing. And I will tell you that a number of judges around the country were not happy with the result that someone could plead guilty without actually physically being in court to plead and having the district court judge see the defendant. So this is a big deal. But you're telling me that in the government's view, just saying you don't have to show up in person, we can proceed remotely because the delay would harm the interests of justice is enough? That is the government's position. I think obviously, you know, the government has a view in terms of the way the CARES Act is written, but it really is, I think it's a case-by-case determinative basis. And so, you know, I guess the question is ultimately pursuant to the CARES Act, where it just says specific finding on these points, whether or not that's enough. And pursuant to the CARES Act, the government submits that at the time that Judge Spredney made his findings, that was enough. Now, I will say, after this court's decision in LaRue, it may be that more is required pursuant to this court's decision in LaRue. But ultimately, this case is a question of whether or not Mr. Cheney's substantial rights were affected. It is the government's mission that they were not impacted, and that certainly even were this court to find out what Judge Spredney said wasn't enough, that Mr. Cheney cannot meet the third prong in order to satisfy plain error review, which brings us back to the appellate waiver, and in which case the sentencing issues should not be addressed because they were all waived pursuant to the appellate waiver. Unless the court has any further questions, the government rests on its submission. Thank you very much, Ms. Kessler. Thank you, Your Honors. Your Honors, there's a reason the CARES Act exists. Without it, there's a right to physical presence in court. There's Rule 43, and there's the Constitution. The plain language of the CARES Act calls for specific findings. Those words have meaning. That doesn't mean boilerplate. That doesn't mean generalized findings. The court's use of generalized findings here that would apply in any case are the equivalent of no findings. What do you make of the analogy that the government proposes to the speedy trial act findings? The level of specificity. Would there be, in your view, a different level of specificity required? The same? Less? I don't know. I would analogize this more closely to specific findings at sentencing, right, that an individualized look at a defendant is required and that a court has to say, under Booker in the line of cases, has to tell us why that sentence applies in order for there to be meaningful review. But, again, I guess I'm just wondering. I'm curious if you wouldn't mind just commenting on the applicability or inapplicability of the analogy to speed trial act, because there's some similar language there, right? If you look at 3161, you know, if the judge granted such continuance on the basis of findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. And, of course, speedy trial act is its own right, but it's ultimately a prophylactic rule designed to guarantee a constitutional right. So I'm just curious, you know, why would there be a higher or lower standard of specificity demanded? Because the word specific is used in the CARES Act. So the word specific is what you think is different from 3161. Yes. Specific findings. I would also argue that contrary to what the government says, and we do, as we say in our papers, argue that this is a structural error. This error strikes at the heart of the Constitution and the defendant's fundamental rights and, therefore, is not a plain error case. A right to be present is- The problem with that argument is that in the cases prior to LaRue, where we could have said that it was a structural error, and we should have said it, when it was almost obligated to say it, we instead employed a plain error analysis. Those- So where are you drawing a structural error analysis from? All of the cases that- the cases to which Your Honor is referring are not cases where a defendant was sentenced in the first instance. They're all cases of resentencing when either to aspects of the sentence that did not affect the overall incarceration, or affected another piece of the sentence, or when the defendant knew what sentence he was already going to get based on the prior sentencing proceeding. But doesn't that really go to the question of whether structural or non-structural analysis, harmless error analysis, is applicable? It seems to me you're positing situations where we can ascertain, look, there couldn't have been a difference, right? Couldn't have been a change in outcome. That is a harmlessness analysis by definition. Now, maybe your argument could then be, okay, there are scenarios where you can tell it's harmless. Let's say this had been 100% a B1C or C1C plea, right, where the defendant had not only agreed that it would be X number of months, but he also agreed that it would be consecutive, let's say. And there was no discretion on the part of the district judge once the plea agreement was accepted and everything was imposed, and we could tell that there is no possible different outcome. But that would seem to suggest not that we have subcategories of structural and non-structural depending on the facts, but that we engage in a harmlessness analysis, because structural error is something triggered by the nature of the claim, not whether the facts show that there was no harm, right? That is a harmlessness analysis. So I think that's the question here, right? Yes, Your Honor. Well, with my limited time, I would also say that even under a plain error analysis here, the effect on my client was not uncertain or indeterminate, that here the court was facing sentencing Mr. Cheney to either concurrent or consecutive sentence. So here this impacted 20 years of his life. This is a 20-year-old man who's already facing a 25-year sentence for conduct that occurred in the same time period. The district judge acknowledged at his sentencing that this was a difficult case, that this was not cut and dry, and invited the parties to influence his thinking, to change his mind in effect. The impact of a remote proceeding on Mr. Cheney's ability to do that is clear. My client was barely able to say anything before he stopped speaking. He was without the assistance of a lawyer. He twice told the court that he didn't know what to say. I mean, there's a lot riding on this 20-year-old man's shoulder to change the court's way of thinking. That he accepted responsibility. I don't understand when you say he was without the assistance of a lawyer. Without the steadying hand of a lawyer by his side. A steadying hand of a lawyer is different from without the assistance of a lawyer. Yes, Your Honor. So he had a lawyer. He could communicate with that lawyer. I don't know that you're arguing necessarily that the Zoom platform, or whatever the platform was, made it more difficult for him to communicate effectively with counsel. Maybe you are saying that. But he had a lawyer. Well, there's a reason why. This is why we have the entire CARES Act structure. The CARES Act was created in large part to facilitate sentences of time served. For defendants who may have had to wait unnecessarily to be sentenced. Here, my client had every interest in appearing in person. For the judge to see him as a human being. To make the difficult decision of whether he should face 20 years or 45 years. Appearing from inside a cell, looking at a camera like this one, without a lawyer by his side. My client was asked to change the judge's mind. But you are not arguing that the district court judge had formally restricted communication with counsel in any way. I'm sorry, could you repeat that? You are not arguing that Judge Scrutiny formally restricted communication with counsel in any way. No. No, I'm not, Your Honor. What I'm arguing is that my client and my client's demeanor, and the impression the court had of him, mattered a great deal in such a close case when the judge said this is a difficult case and invited the parties to change his mind. But didn't the judge understand what was at stake when he said if he made it concurrent, this sentence would be three or four years and would be woefully inadequate? Isn't that the heart of the question before the judge? And didn't he understand it completely? I'm not arguing that the judge didn't understand what he was doing when he imposed that sentence. But what I am saying is that he was essentially making determinations about my client and his redemptive capacity and his credibility and his remorse that factored into his decision. And in such a close case, when the conduct took place over the span of the same week that he was sentencing, as the conduct he was already in prison for, when another person in the case who was substantially more culpable had already been sentenced for more murders than my client and had gotten 30 years in total for both a drug conspiracy and a murder conspiracy, here's my client who's less culpable and now getting 45 years. So, you know, under these circumstances, under most circumstances, we understand that this is a right that's important, that appearing in person to plead your case, that having a judge look at you and make credibility findings about you and judge what sentence is appropriate. And under these circumstances, it matters. We cannot say it does not have a determinate effect. We cannot say the effect is speculative when so much is at stake. Okay. Thank you. I mean, the CARES Act drew a balance, and that's reflected in the language of the CARES Act. But I thank you. We'll reserve the decision.